**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TWITTER, INC., *Plaintiff-Appellant*, v. KEN PAXTON, in his official capacity as Attorney General of Texas, *Defendant-Appellee*. | No. 21-15869 D.C. No. 3:21-cv-01644-MMC ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, District Judge, Presiding

Argued and Submitted January 10, 2022
San Francisco, California

Filed March 2, 2022
Amended December 14, 2022

Before: Mark J. Bennett, Ryan D. Nelson, and Patrick J.
Bumatay, Circuit Judges.

Order;
Opinion by Judge R. Nelson

# SUMMARY[*]

## Civil Rights

The panel amended its opinion filed March 2, 2022; denied a petition for panel rehearing; and denied a petition for rehearing en banc on behalf of the court in an action brought by Twitter against Ken Paxton, the Attorney General of Texas, in his official capacity, alleging First Amendment retaliation.

After the events at the U.S. Capitol on January 6, 2021, Twitter banned President Donald Trump for life. Soon after Twitter announced the ban, the Texas Office of the Attorney General (OAG) served Twitter with a Civil Investigative Demand (CID) asking it to produce various documents relating to its content moderation decisions. Twitter sued Paxton, in his official capacity, in the Northern District of California, arguing that the CID was government retaliation for speech protected by the First Amendment. Twitter asked the district court to enjoin Paxton from enforcing the CID and from continuing his investigation, and to declare the investigation unconstitutional. The district court dismissed the case as not ripe. On March 2, 2022, the panel issued an opinion affirming the district court and holding that Twitter's claims were not prudentially ripe. On reconsideration, the panel in this amended opinion affirmed the district court on the grounds that Twitter's claims were not constitutionally ripe.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that Twitter is not really making a pre-enforcement challenge to a speech regulation; Twitter does not allege that its speech is being chilled by a statute of general and prospective applicability that may be enforced against it. Rather, Twitter alleges that OAG targeted it specifically with the CID and related investigation. And the subject of its challenge is not only some anticipated future enforcement action by OAG; Twitter claims OAG has already acted against it. The panel therefore concluded that a retaliatory framework rather than a pre-enforcement challenge inquiry was appropriate to evaluate Twitter's standing.

The panel held that Twitter's allegations were not enough to establish constitutional standing and ripeness because Twitter failed to allege any chilling effect on its speech or any other legally cognizable injury that the requested injunction would redress. Twitter's claim that its ability to freely make content decisions "was impeded" was vague and referred only to a general possibility of retaliation. It was not a claim about the chilling effect of the specific investigation at hand. And Twitter's naked assertion that its speech has been chilled is a bare legal conclusion upon which it cannot rely to assert injury-in-fact. Nor did Twitter's other allegations meet the concreteness and particularity standards that Article III requires. Finally, Twitter had not suffered any Article III injury because the CID is not self-enforcing. Pre-enforcement, Twitter never faced any penalties for its refusal to comply with the CID. And enforcement is no rubber stamp: If OAG seeks to enforce the CID, it must serve the recipient with the petition, the state court can conduct hearings to determine whether to order enforcement, and the recipient may appeal to the Texas Supreme Court.

## COUNSEL

Peter G. Neiman (argued), Alex W. Miller, and Rishita Apsani, Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York; Patrick J. Carome, Ari Holtzblatt, Anuradha Sivaram, and Susan Pelletier, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; Mark D. Flanagan, Wilmer Cutler Pickering Hale and Dorr LLP; Palo Alto, California; for Plaintiff-Appellant.

Lanora C. Pettit (argued), Principal Deputy Solicitor General; Ryan D. Walters, Attorney; Benjamin D. Wilson, Deputy Solicitor General; Judd E. Stone II, Solicitor General; William T. Thompson, Special Litigation Unit Deputy Chief; Patrick Sweeten, Special Litigation Unit Chief; Brent Webster, First Assistant Attorney General; Ken Paxton, Attorney General of Texas; Office of the Texas Attorney General, Austin, Texas; Michael K. Johnson, Lewis Brisbois Bisgaard & Smith LLP, Walnut Creek, California; for Defendant-Appellee.

KatieLynn B. Townsend, Bruce D. Brown, Gabe Rottman, Grayson Clary, Gillian Vernick, and Mailyn Fidler, Reporters Committee for Freedom of the Press, Washington, D.C., for Amici Curiae The Reporters Committee for Freedom of the Press and Media Law Resource Center Inc.

Caitlin Vogus, Samir Jain, and Emma Llanso, Center for Democracy & Technology, Washington, D.C., for Amici Curiae Center for Democracy & Technology, Electronic Frontier Foundation, Media Coalition Foundation, Inc, National Coalition Against Censorship, Pen America, and R Street Institute.

Ilana H. Eisenstein, Whitney Cloud, and Ben C. Fabens-Lassen, DLA Piper LLP, Philadelphia, Pennsylvania; Peter Karanjia, DLA Piper LLP, Washington, D.C.; for Amici Curiae NetChoice LLC, Computer & Communications Industry Association, Chamber of Progress, and TechNet.

## ORDER

The opinion filed March 2, 2022, and appearing at 26 F.4th 1119, is amended by the opinion filed concurrently with this order.

The full court has been advised of the petition for rehearing en banc, filed March 30, 2022, and no judge requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. With these amendments, the panel unanimously votes to DENY the petition for panel rehearing and rehearing en banc.

## OPINION

R. NELSON, Circuit Judge:

After the events at the U.S. Capitol on January 6, 2021, Twitter banned President Donald Trump for life. Soon after Twitter announced the ban, the Texas Office of the Attorney General (OAG) served Twitter with a Civil Investigative Demand (CID) asking it to produce various documents relating to its content moderation decisions. Twitter sued Ken Paxton, the Attorney General of Texas, in his official capacity, arguing that the CID was government retaliation

for speech protected by the First Amendment. The district court dismissed the case as not ripe. We affirm.

## I

## A

OAG says that it has been investigating Twitter's content-moderation decisions in response to citizen complaints since 2018. Twitter executives have said publicly that Twitter does not moderate content based on political viewpoint. After Twitter banned President Trump for life, Paxton tweeted that Twitter (along with Facebook) was "closing conservative accounts," and that it and other companies stood "ready/willing to be the left's Chinese-style thought police." He vowed that "[a]s AG, I will fight them with all I've got."

A few days later OAG served Twitter with a CID, requiring it to produce various documents related to its content moderation decisions. Paxton says that OAG "does not seek to investigate the content-moderation decisions that Twitter makes—and could not do so under [Texas's unfair and deceptive trade practices law]—but rather is conducting an investigation into whether Twitter truthfully represents its moderation policies to Texas consumers." But Twitter paints this rationale as a pretext for Paxton's unlawful retaliation.

## B

After some negotiation, rather than respond to the CID or wait for OAG to move to enforce it in Texas state court, Twitter instead sued Paxton in the Northern District of California. It alleged that both the act of sending the CID and the entire investigation were unlawful retaliation for its protected speech. Claiming under 42 U.S.C. § 1983 that

Paxton violated its First Amendment rights, Twitter asked the district court to enjoin Paxton from enforcing the CID and from continuing his investigation, and to declare the investigation unconstitutional. In Twitter's view, its content moderation decisions are protected speech because it is a publisher, and it has a First Amendment right to choose what content to publish. Pointing to Paxton's public comments, Twitter argues that the CID was served in retaliation for its protected speech and that it chills Twitter's exercise of its First Amendment rights.

In response, Paxton contested personal jurisdiction, venue, ripeness, and whether Twitter had stated a claim. On ripeness, he argued that pre-enforcement challenges to non-self-executing document requests are not ripe. *See Reisman v. Caplin*, 375 U.S. 440 (1964). Twitter countered that the case was ripe because it had suffered an injury through chilled speech. The district court held that it had personal jurisdiction and that venue was proper, and then dismissed the case as not ripe, relying on *Reisman*. It did not reach whether Twitter stated a claim.

After the district court dismissed the case, Twitter moved for an injunction pending appeal, arguing again that the case was ripe. The district court declined to issue one, relying on the same reasoning as before. A divided motions panel affirmed. Twitter now appeals the district court's original order dismissing the case. On March 2, 2022, we issued an opinion affirming the district court and holding that Twitter's claims were not prudentially ripe. On reconsideration, we affirm the district court because Twitter's claims are not constitutionally ripe.

## II

The district court's decision to dismiss a case for lack of ripeness is reviewed de novo. *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010). The district court's decision may be affirmed on any ground supported by the record, even if not relied on by the district court. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951, 974 (9th Cir. 2017).

## III

### A

Along with standing and mootness, ripeness is one of three justiciability requirements. Ripeness "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021) (internal quotation marks omitted) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). "The 'basic rationale' of the ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967)).

We have separated out the constitutional and prudential components of ripeness. "[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003) (citing *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)). Whether framed as an issue of standing or ripeness, an injury must involve "an invasion of

a legally protected interest that is (a) concrete and particularized[,] and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted).

We "appl[y] the requirements of ripeness and standing less stringently in the context of First Amendment claims." *Wolfson*, 616 F.3d at 1058 (citing *Getman*, 328 F.3d at 1094). This does not mean, however, that any plaintiff may bring a First Amendment claim "by nakedly asserting that his or her speech was chilled . . . ." *Getman*, 328 F.3d at 1095; *see Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010) ("Mere allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." (cleaned up)).

The First Amendment usually prohibits the government from enacting laws that regulate protected speech, and it "prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech. *Houston Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1259 (2022) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)). Pre-enforcement challenges to speech regulations and retaliation claims differ on the merits, of course, but they also carry different requirements for standing.

In evaluating standing in a pre-enforcement challenge to a speech regulation, our "inquiry focuses on (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute." *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th

Cir. 2007) (quoting *Getman*, 328 F.3d at 1094). "The potential plaintiff must have an 'actual or well-founded fear that the law will be enforced against'" it. *Id.* at 851 (quoting *Getman*, 328 F.3d at 1095). Given that pre-enforcement claims necessarily occur before enforcement actions have begun, the standing factors for pre-enforcement claims are substantively similar to the ripeness factors and identical concerns motivate both analyses. *See Getman*, 328 F.3d at 1093–94.

In a typical First Amendment retaliation case, the plaintiff challenges a state action that has been taken against the plaintiff. Determining standing in this context does not require the inquiry that we undertake in the pre-enforcement context, in which we must "determin[e] when the threatened enforcement of a law creates an Article III injury." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Accordingly, our inquiry in the retaliation context focuses directly on the three elements that form the "irreducible constitutional minimum" of Article III standing. *Lujan*, 504 U.S. at 560. To establish standing in a First Amendment retaliation case, a plaintiff must show "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Driehaus*, 573 U.S. at 157–58 (2014) (cleaned up). In the First Amendment context, "the injury-in-fact element is commonly satisfied by a sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising his right to free expression." *Edgar v. Haines*, 2 F.4th 298, 310 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 2737 (2022) (internal quotations and citations omitted).

B

OAG contends that this case is a pre-enforcement case because the CID is not self-enforcing. But Twitter is not really making a pre-enforcement challenge. Twitter does not allege that its speech is being chilled by a statute of general and prospective applicability that may be enforced against it. Rather, Twitter alleges that OAG targeted it specifically with the CID and related investigation. And the subject of its challenge is not only some anticipated future enforcement action by OAG; Twitter claims OAG has already acted against it. We therefore conclude that the retaliatory framework is the appropriate one under which to evaluate Twitter's standing. And under that framework, Twitter's allegations are not enough to establish constitutional standing and ripeness because Twitter fails to allege any chilling effect on its speech or any other legally cognizable injury.

First, Twitter's complaint, taken as true, does not show any chilling effect on its speech. Twitter alleges that its "ability to freely make its own decisions as to what content to include on its platform is impeded by the persistent threat that government actors who disagree with those decisions may wield their official authority to retaliate, such as by issuing a burdensome CID or commencing an intrusive investigation," that "the CID and associated investigation chill Twitter's speech," and that "[i]t is already being forced to weigh the consequence of a burdensome investigation every time it contemplates taking action based on a rules violation by a user that AG Paxton favors." In a declaration appended to Twitter's motion for a temporary restraining order, a Twitter employee declared that he believes the knowledge that content moderation discussions and decisions are subject to disclosure under the CID will result

in "significant diminishment of the willingness of Twitter employees to speak candidly and freely in internal content moderation decisions." And that, in turn, "would likely compromise and inhibit" Twitter's ability to make content moderation decisions."

Both the allegations and declaration do not quite show chilled speech. *See Barnum Timber Co. v. EPA*, 633 F.3d 894, 898 (9th Cir. 2011) (considering declarations filed with the complaint for standing analysis). Even though "[s]peech can be chilled even when not completely silenced," *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005), Twitter's claim that its ability to freely make content decisions "is impeded" is vague and refers only to a general possibility of retaliation. It is not a claim about the chilling effect of the specific investigation at hand. And Twitter's naked assertion that its speech has been chilled is "a bare legal conclusion" upon which it cannot rely to assert injury-in-fact. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). "[T]he plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Nor do Twitter's other allegations meet the concreteness and particularity standards that Article III requires. Twitter's claim that it is forced to "weigh the consequence" of investigations when it makes moderation decisions is too indefinite; Twitter has not alleged how, exactly, this "weighing" affects its speech. And the Twitter employee's declaration stating his beliefs regarding the potential effects of the CID is highly speculative. He does not declare that the OAG's CID has actually chilled employees' speech or Twitter's content moderation decisions; the employee only claims that it would "if th[e] CID and investigation were

allowed to proceed." A concrete injury need not be tangible but "must actually exist." *Spokeo*, 578 U.S. at 340.

Twitter does not allege that it has suffered any other legally cognizable harm, and Twitter does not seek damages. It claims that the CID forced it to incur financial costs and divert employee time, and it produced roughly 1,800 pages of documents. Still, the enforceability of the CID remains an open question, so Twitter incurred these costs voluntarily in responding to the CID. And all the documents Twitter produced to OAG appear to have already been available to the public. In any event, because Twitter does not seek damages, any past financial harm is not redressable by the injunctive relief it seeks and therefore provides no independent basis for jurisdiction.[1]

Finally, Twitter has not suffered an Article III injury because the CID is not self-enforcing. *See* Tex. Bus. & Com. Code § 17.62(b), (c) (requiring OAG to petition for an order of the court to enforce the CID if the recipient fails to meet the demand). Pre-enforcement, Twitter never faced any penalties for its refusal to comply with the CID. *Id*. And enforcement is no rubber stamp: If OAG seeks to enforce the CID, it must serve the recipient with the petition, the state court can conduct hearings to determine whether to order enforcement, and the recipient may appeal to the Texas Supreme Court. *Id*. So to complain about the CID in this posture is to speculate about injuries that have not and may

---

[1] Twitter conclusorily and vaguely asserts that it will continue to incur financial costs responding to the CID, but its own pleadings and declaration indicate that Twitter completed its voluntary response to the CID, and in the absence of any enforcement action by OAG, Twitter's future costs are too speculative to establish injury-in-fact redressable by the requested injunctive relief.

never occur.  And to the extent Twitter argues that any actions it has taken in response to the CID create an Article III injury, those injuries are self-inflicted because the actions were voluntary.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013).

C

1

Twitter relies on a series of First Amendment cases to argue that "even informal threats of legal sanction, when used as a means to punish or restrict a person's exercise of First Amendment rights, create an immediate First Amendment injury that courts may remedy."  *See, e.g.*, *Bantam Books v. Sullivan*, 372 U.S. 58 (1963).  Paxton responds that those cases are "generalized First Amendment principles" that don't apply here and largely don't discuss ripeness at all.  It's true that some of these cases don't discuss ripeness.  Even so, a closer look at them shows that they don't support finding ripeness here.  We first discuss Twitter's foundational case, *Bantam Books*, and then address our precedents.

a

*Bantam Books* was different from this case in three ways: it involved allegations that the law had been broken, it addressed a state regulatory scheme that "provide[d] no safeguards whatever against the suppression of . . . constitutionally protected[] matter," 372 U.S. at 70, and it did not address ripeness.

The threat to speech in *Bantam Books* came from the "Rhode Island Commission to Encourage Morality in Youth," a state regulatory body whose mission was to "educate the public concerning any book, picture, pamphlet,

ballad, printed paper or other thing containing obscene, indecent or impure language, or manifestly tending to the corruption of the youth . . . ." *Id*. at 59. The Commission contacted distributors of these books, told them that the books were objectionable, thanked them in advance for their cooperation, reminded them that the Commission recommended "purveyors of obscenity" for prosecution, and told them that copies had been forwarded to local police departments. *Id*. at 61–63. Several publishers sued, and the Supreme Court held that the Commission's acts violated the First Amendment.

The Court's holding was rooted in the complexity of its obscenity jurisprudence. It first pointed out that although obscenity is not protected speech, state regulation of obscenity also is subject to "an important qualification," which is that the test for obscenity is complex and requires safeguards in its application. *Id*. at 65 (citing *Roth v. United States*, 354 U.S. 476, 488 (1957)). The problem with the Commission was that it had no safeguards at all: There was no judicial review of the notices, no notice and hearing, and it levied vague and uninformative allegations. *Id*. at 70–71. It was these faults that led the Supreme Court to say that "[t]he procedures of the Commission are radically deficient" and to call them a "system of informal censorship." *Id*. at 71.

*Bantam Books* differs from this case. First, unlike the Commission, OAG has not alleged that the law has been broken; it has started an investigation and requested documents. Even a statement like "I'll fight them with all I've got" is not an allegation that Texas's law has been violated. Second, unlike the Commission's, OAG's actions come with procedural safeguards: If OAG moves to enforce the CID, Twitter can raise its First Amendment defense then,

16                    TWITTER, INC. V. PAXTON

before there are any underlying charges.  Twitter also could
have challenged the CID in Texas state court.  Tex. Bus. &
Com. Code § 17.61(g).  In *Bantam Books*, there were no
such opportunities.

Ultimately, in *Bantam Books*, the Supreme Court
"look[ed] through forms to the substance" and found that the
Commission was just a "system of informal censorship." *Id*.
at 67, 71.  OAG's investigation is not a system of informal
censorship.  *Bantam Books* does not support finding ripeness
here.

b

Along with *Bantam Books*, Twitter relies on several of
our cases from the last few decades.  Some of these cases
don't address ripeness at all, and others involve facts that are
very different from this case.

Twitter cites *White v. Lee* to argue that "retaliatory
investigations can inflict First Amendment injuries by
chilling speech." 227 F.3d 1214, 1228 (9th Cir. 2000). It's
true that *White* held that a retaliatory investigation violated
the targets' First Amendment rights. *Id.* But the case
doesn't address ripeness at all. And even more to the point,
in *White*, the plaintiffs would have had no opportunity to
challenge any aspect of the investigation until formal
charges were brought, at which point they could have faced
a large fine. *Id*. at 1222. But here, as the district court
pointed out, "Twitter faces no such consequence" because it
can raise its First Amendment defense if Paxton moves to
enforce the CID.**[2]**

---

[2] As the district court pointed out, *Lacey v. Maricopa County*, 693 F.3d
896 (9th Cir. 2012), and *Sampson v. County of Los Angeles ex rel. Los
Angeles County Department of Children & Family Services*, 974 F.3d at

*Wolfson* also doesn't apply. *Wolfson* also did not involve an investigation. *See* 616 F.3d at 1058. *Arizona Right to Life Political Action Committee v. Bayless*, 320 F.3d 1002 (9th Cir. 2003), similarly does not apply for this reason. In that case, there was no investigation, and the plaintiffs alleged a desire to engage in conduct likely prohibited. *See id.* at 1006.

Finally, *Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009), doesn't apply because it arose in a very different context. *Brodheim* addressed neither standing nor ripeness. And it concerned a state prison official's alleged retaliatory threat against a state prisoner. *Id*. at 1265–66. The case does not apply because its rule was rooted in the disparity in power and control between prison officials and inmates, and such a disparity is not present here.

In *Brodheim*, in response to an inmate's administrative complaint, a prison official told the inmate, "I'd also like to warn you to be careful what you write, req[u]est on this form." *Id*. at 1266 (alteration in original). A non-self-executing CID that can be challenged when enforced (and could have been challenged before enforcement) does not create the same threat of further sanctions as this prison official's alleged threat.

---

1019, do not apply for the same reason. In *Lacey*, the prosecuting attorney had authorized the plaintiffs' arrest, 693 F.3d at 922–23, and in *Sampson*, the plaintiff was threatened with the loss of custody of a child, 974 F.3d 1020–21. Because Twitter can raise its First Amendment challenge in an action by OAG to enforce the CID, it faces no such consequences.

2

For his part, Paxton asks us to find this case unripe by relying on *Reisman*, 375 U.S. 440. We decline to do so. *Reisman* doesn't apply for two simple reasons: It's not about the First Amendment nor ripeness.

In *Reisman*, the IRS served a married couple's accountants with a document request. 375 U.S. at 443. The couple's lawyer sued, arguing that the accountants might comply and that their compliance would violate the attorney-client privilege. *Id*. at 442. He also argued that the request was an unreasonable seizure and that it violated his clients' rights against self-incrimination. *Id*. The Supreme Court dismissed the case, but not because it was unripe. Rather, the Court dismissed the case for "want of equity." *Id*. at 443. Because the petitioners could challenge the document request "on any appropriate ground," the Court held that they had "an adequate remedy at law" and thus dismissed the case. *Id*. at 443, 449.

This case is different from *Reisman* because it involves the First Amendment, under which a chilling effect on speech can itself be the harm.**[3]** *See Wolfson*, 616 F.3d at 1059 (citing *Virginia v. Am. Booksellers Ass'n*, 484 U.S.

---

[3] *But see Google, Inc. v. Hood*, 822 F.3d 212, 225 (5th Cir. 2016) (applying *Reisman* to Google's pre-enforcement challenge under the Communications Decency Act, the Fourth Amendment, and the First Amendment to a non-self-executing CID in holding the challenge was not ripe). We do not find the Fifth Circuit's decision in *Google* persuasive for the same reason we do not apply *Reisman* here. Although the First Amendment was at issue in *Google*, the court did not recognize that Google could have suffered injury in the form of objectively reasonable chilling of its speech or another legally cognizable harm from the CID even prior to the CID's enforcement.

383, 393 (1988)). The key to the holding in *Reisman* was that there had not yet been an injury: The Court held that the remedy specified by Congress (to challenge the document request) "suffer[ed] no constitutional invalidity." *Reisman*, 375 U.S. at 450. In other words, the injury in *Reisman* would only occur if the document request were satisfied. The Court dismissed the case because there was a way for the petitioners to avoid any potential injury while following the statutory process.

That's not the case here. Twitter has alleged—however insufficiently—that its constitutional injury has already occurred; there is no way for it to avoid that alleged injury by challenging the document request later. *Reisman* also isn't about ripeness: Indeed, it doesn't mention ripeness at all.[4]

### D

Because our analysis is rooted in ripeness and not equitable principles, it is not affected by Twitter's declaratory judgment claim. It's true that "[d]eclaratory relief may be appropriate even when injunctive relief is not." *Olagues v. Russoniello*, 770 F.2d 791, 803 (9th Cir. 1985). But unlike the analysis of *Reisman*, our ripeness analysis does not rely on the lack of an adequate remedy at law, so it applies equally to Twitter's claims for equitable and declaratory relief.

---

[4] *Zimmer v. Connett*, 640 F.2d 208 (9th Cir. 1981), does not apply for the same reason. That case also concerned a document request from the IRS to a taxpayer, and we dismissed the case "[b]ecause the taxpayer had an adequate remedy at law." *Id*. at 209.

## IV

The issues here are not fit for judicial decision because Twitter's allegations do not show that the issuance of the CID is chilling its speech or causing it other cognizable injury that the requested injunction would redress. The case is thus constitutionally unripe, and the district court's order dismissing the case is **AFFIRMED**.